Ex parte Hector SANCHEZ, Relator.

No. C–4829.

Supreme Court of Texas.

Feb. 12, 1986.

Thomas G. White, Corpus Christi, for relator.

Larry Ludka and Tom Greenwell, Corpus Christi, for respondent.

## ORIGINAL HABEAS CORPUS PROCEEDING

KILGARLIN, Justice.

Hector Sanchez, official court reporter for the 103rd Judicial District Court of Cameron County, was held in contempt by the Court of Appeals for the Thirteenth Supreme Judicial District for failing to file, as ordered, a statement of facts in a cause on appeal in that court. His punishment was a $500 fine and thirty days in jail, and he was further ordered confined until he purged himself of contempt by completing and filing the statement of facts.

Sanchez has sought a writ of habeas corpus from this court, asserting four reasons why his restraint is unlawful. Pending disposition of this case, we released Sanchez from the Nueces County jail upon his posting a proper bond as ordered by this court. Now, having concluded that the order of the court of appeals holding Sanchez in contempt was proper, we deny the writ of habeas corpus and order Sanchez remanded to the custody of the Nueces County sheriff.

The underlying cause in the court of appeals is *Lee Ross Puckett v. Grizzard Sales, Inc.*. The record on appeal was due October 11, 1985. Sanchez received a request for the statement of facts on October 3, 1985, and signed an affidavit in support of Puckett's motion to extend the time for filing the record on appeal. Sanchez's affidavit stated "[t]he Statement of Facts can be prepared by December 11, 1985." In that affidavit, Sanchez estimated that the statement of facts would be 350 pages in length. The court of appeals, in an order dated November 14, 1985, extended the time for filing the record but specifically ordered Sanchez to prepare and file the statement of facts by December 11, 1985. A copy of the order was received by Sanchez on November 19, 1985.

Sanchez was already under order to prepare and file a statement of facts in a criminal case on appeal in the same court. In that case, *Domingo Gonzalez, Jr. v. The State of Texas*, a statement of facts had been requested from Sanchez on October 10, 1984. The court of appeals ordered Sanchez to complete and file the statement of facts in *Gonzalez* by August 30, 1985. That statement of facts was not timely filed, and, after two hearings on contempt, Sanchez was incarcerated in the Nueces County jail on November 26, 1985.[1]

Sanchez did not file a statement of facts in *Puckett* by December 11, 1985. Accordingly, on December 12, 1985, the court of appeals ordered Sanchez to appear on December 23, 1985 and show cause why he should not be held in contempt for failing to file the statement of facts in *Puckett* by the date ordered. Sanchez, still in the Nueces County jail as a result of the contempt holding in *Gonzalez*, was promptly served with that show cause order.

The attorney for Sanchez in this habeas corpus proceeding was also his attorney in the last *Gonzalez* contempt hearing, November 7, 1985.[2] On December 4, 1985, the attorney, Thomas G. White, who serves without compensation by appointment from the court of appeals, met with Sanchez in the Nueces County jail. White discussed Sanchez's needs for securing his court reporting equipment, notes, and other matters necessary for the preparation of the statement of facts in *Puckett*.

White concedes in argument before this court that Sanchez did not attempt to obtain his notes and equipment until December 15, 1985, because he was under the mistaken belief that he would be released from the Nueces County jail on the basis of two for one credit. Sanchez's testimony admits much the same, except he places the date as December 13, 1985. Upon realizing his mistake, Sanchez testified that he requested the equipment be delivered to him. However, he received notes from another case, rather than notes from *Puckett*.

In any event, from about December 15, 1985 until the hearing on contempt on December 23, 1985, Sanchez still had not completed the statement of facts in *Puckett*. Moreover, in addition to *Puckett*, Sanchez owed statements of facts in at least six criminal appeals and two civil appeals in the Corpus Christi court. The records of that court reflect that it became necessary on December 31, 1985 for the court, on its own motion, to extend the filing of the statements of facts in those other eight cases and in *Puckett* until further order.

---

1. For an explanation of facts and proceedings in that cause, *see In Re Hector Sanchez*, 698 S.W.2d 462 (Tex.App.—Corpus Christi 1985).

2. Sanchez remained out of jail on bond in *Gonzalez*, from November 7, 1985 until November 26, 1985 while seeking habeas corpus relief from the Court of Criminal Appeals, which was denied.

By December 31, 1985, Sanchez had completed and filed the statement of facts in *Gonzalez.*

Sanchez's four grounds for habeas corpus relief are: (1) he was not granted a ten-day delay of the contempt hearing as requested in a motion for continuance; (2) because he was in jail as a result of the *Gonzalez* contempt, and without equipment and cooperation from the Nueces County Sheriff's Office, there was impossibility of compliance with the November 14, 1985 order; (3) if he were sentenced for contempt in each of the additional cases in which he owed statements of facts, his punishment could exceed six months, entitling him to a jury trial, and thus it was error to overrule his motion to consolidate all causes in which statements of facts were due; and (4) civil contempt (the coercive aspect of the order) and criminal contempt (the thirty days confinement and $500 fine punishment aspect) cannot be combined in the same order of contempt.

■ The last two contentions do not require much discussion. It is true that the United States Supreme Court has said that where a court may impose a sentence in excess of six months, a contemner may not be denied a right of trial by jury. *Bloom v. Illinois,* 391 U.S. 194, 198–202, 88 S.Ct. 1477, 1480–82, 20 L.Ed.2d 522 (1967). It is also true that even when offenses are separate and the sentence for each contempt is less than six months, the contemner is nevertheless entitled to a trial by jury if the offenses are aggregated to run consecutively, so as to result in punishment exceeding six months. *Ex Parte McNemee,* 605 S.W.2d 353, 356 (Tex.Civ.App.—El Paso 1980, habeas granted).

■ However, Sanchez asks us to assume that he will fail to timely file the statements of facts in the eight additional cases; that this will result in a show cause order from the court of appeals; that this will next result in a holding of contempt; that this will further result in punishment for each separate offense; and, that such combined punishment will exceed a total of six months confinement. We cannot possibly make all of these assumptions, nor could the court of appeals in passing upon Sanchez's motion for consolidation of all of the various causes. There was no error in the court of appeals overruling the motion to consolidate causes.

■ As to combining criminal contempt and civil contempt (punishment and coercion) into one order, Sanchez cites no cases. Moreover, Sanchez offers no policy argument as to why the two types of contempt should not be combined in the same order and we can think of no reason why the orders should be separate. Separate orders would only tend to confuse jailers. A judgment combining punishment and coercion was found not to be in violation of a predecessor contempt statute. *Ex Parte Klugsberg,* 126 Tex. 225, 229, 87 S.W.2d 465, 468 (1935). The enactment of Tex. Rev.Civ.Stat.Ann.art. 1911a[3] does not change the permissiveness of incorporating the two forms of contempt into one order.

In respect to Sanchez's continuance argument, all parties agree that attorney White was informally advised four days prior to the December 23 contempt hearing that he would again represent Sanchez. However, the order appointing White to represent Sanchez was not signed until the date of the hearing. Arguing that a continuance should have been granted, Sanchez cites Tex. Code Crim.Proc. art. 26.04(b), which states: "The appointed counsel is entitled to ten days to prepare for trial, but may waive the time by written notice, signed by the counsel and the accused."

■ We recognize that contempt proceedings are quasi-criminal in nature. *Ex Parte Cardwell,* 416 S.W.2d 382, 384 (Tex. 1967). Further, we acknowledge that proceedings in contempt cases should conform as nearly as practicable to those in criminal cases. *Ex Parte Scott,* 133 Tex. 1, 10, 123 S.W.2d 306, 311 (1939). It is because of our eagerness to guarantee that Sanchez's rights of due process be protected and that he not be deprived of his liberty except by

---

**3.** Now Tex.Gov't Code Ann. § 21.001.

due course of law that we do not consider as waiver of this point that the motion for continuance was orally made and was unsworn. It is set out in the statement of facts of the contempt hearing.

It is now settled law in this state that if a contemner requests, he is entitled to be represented by counsel in a contempt proceeding. *Ex Parte Hiester*, 572 S.W.2d 300, 302 (1978). However, it is a unique situation that would allow the appointment of counsel for a court reporter, whom we would ordinarily assume to have sufficient funds to retain an attorney. Nevertheless, upon Sanchez's request, the Corpus Christi Court of Appeals appointed counsel, and that counsel was entitled to a reasonable time to prepare his defense of Sanchez. We concede, as did the United States Supreme Court in *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), that the right to counsel can be rendered an empty formality if counsel is denied a justifiable request for delay. But, as the Supreme Court said in that case, "[t]he answer [to whether the case should be delayed] must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*

The sole reason given by White to the court of appeals in support of his motion for continuance was so that he could secure witnesses who would testify in support of the impossibility of compliance defense. He identified those witnesses as jail personnel and the person who furnished the wrong notes and diskettes to Sanchez.

■ Under the rule announced in *Ungar v. Sarafite*, and in consideration of the circumstances of this case, we conclude attorney White had adequate time to prepare for the contempt hearing. The hearing on contempt in *Gonzalez* was already completed when White counseled Sanchez in the Nueces County jail on December 4, 1985 about completing the *Puckett* statement of facts. White admits that he was informally told on December 19, 1985 that he would again be Sanchez's counsel. He came to court armed with a written motion

for consolidation. Jail personnel who could testify as to any restrictions placed upon Sanchez's use of his equipment and preparation of the statement of facts were readily available for subpoena in the same courthouse complex in which the contempt hearing was held. Sanchez's testimony as to receiving the wrong notes and diskettes was not disputed. The other relevant facts of the impossibility defense were likewise not disputed, only the legal conclusions to be drawn therefrom.

■ We hold that the time requirements of the Code of Criminal Procedure are not hard and fast rules to be adopted in contempt cases insofar as motions for continuance are concerned. Rather, due process requires only that the judge consider the reasons given for delay in context with the circumstances of the particular case. Sanchez's rights to due process were protected. The ingenuity of attorney White and the able defense he rendered is apparent from the record. Minimally, White had four days to prepare a defense. Based on the grounds asserted in his motion for continuance, that was adequate. The motion for continuance was properly denied.

■ Finally, we turn to the impossibility of compliance argument. Sanchez testified that the sheriff's office would only allow him to work in preparation of the *Puckett* record from 7 o'clock a.m. until 3 o'clock p.m. (but not during two meal breaks and two roll call breaks). He also testified as to his having received the wrong notes on *Puckett*. He further testified that he needed to compare his notes with certain records of the District Clerk of Cameron County. None of this was disputed. What is in dispute is whether Sanchez voluntarily put himself in a position where it would be impossible for him to comply with the court order.

In this regard, it will be noted that Sanchez knew on November 19, 1985 that he was under order to have the statement of facts prepared and filed by December 11, 1985. Sanchez admitted that the preparation of the *Puckett* statement of facts

would consume no more than thirty hours. While it is true that the court had ordered Sanchez to simultaneously prepare the *Puckett* statement of facts and the *Gonzalez* statement of facts, the testimony reveals that Sanchez undertook to do much of the legal preparation and leg work for the *Gonzalez* habeas corpus petition, rather than prepare the *Puckett* statement of facts.

Certainly until his incarceration on November 26, 1985, Sanchez was free to work on the *Puckett* statement of facts. All parties concede that after his incarceration, the sheriff's office, at least as early as December 4, 1985, made it possible for Sanchez to work on the *Puckett* statement of facts. That he elected not to do so until about December 15, 1985 was a decision that Sanchez voluntarily made. Thus, his impossibility of compliance defense must fall. As we said in *Ex Parte Helms*, 152 Tex. 480, 482, 259 S.W.2d 184, 186 (1953), it is only involuntary inability to perform a judgment or comply with a court's order that is a good defense in a contempt proceeding.

The requested habeas corpus relief by Hector Sanchez is denied. He is ordered remanded to the custody of the sheriff of Nueces County to comply with the order of contempt of the court of appeals.