**In re Thomas ANASCAVAGE.**

No. 04–03–00927–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 7, 2004.

R. Robert Willmann, Jr., San Antonio, for Appellant.

Waynene C. Combest, Asst. Atty. Gen., San Antonio, Rhonda Amkraut Pressley and John B. Worley, Asst. Attys. Gen., Austin, for Appellee.

Sitting: PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

On December 16, 2003, relator Thomas Anascavage filed a petition for writ of habeas corpus complaining that he has been incarcerated for nonpayment of child support without due process of law. Because we hold the trial court's order as a whole comports with the requirements of due process and the Texas Family Code, we deny the habeas corpus relief. The trial court's order is affirmed as modified below.

### Background

On March 5, 2002, Anascavage was ordered to pay child support of $865.00 per month beginning February 1, 2002 and continuing monthly thereafter. On December 11, 2003, following a hearing, the trial court found Anascavage in arrears in his child support payments in the amount of $17,096.77. The trial court also specifically found that Anascavage failed to pay child support in the amount of $865.00 on the first of the month for the months of May, June, July and August of 2002 in contempt of the prior child support order. The trial court then ordered that Anascavage be committed to the county jail for a period of six months for each of the four incidents of contempt (criminal contempt), the commitments to run concurrently. The trial court also ordered that Anascavage be committed to jail until he pays the $17,096.77 in arrearage and $292 in court costs (civil contempt). The enforcement order calls for a review of the jail sentence on January 15, 2004.

Anascavage brings eight issues on petition for writ of habeas corpus. In his first, second and fourth issues, Anascavage complains the contempt and commitment orders are void because they do not comply with the requirements of Family Code section 157.166 or the protections of due process under the Texas constitution. In the

alternative, in his third issue, Anascavage claims section 157.166(c) is unconstitutional because it does not require the same specific findings for civil contempt commitment as section 157.166(b) requires for criminal contempt commitment. In issues five through eight, Anascavage complains he is being held in contempt and committed to jail on the basis of acts that he is not required to perform until a future date.

## Standard of Review

An original habeas corpus proceeding is a collateral attack on a contempt order. *Ex parte Casillas*, 25 S.W.3d 296, 298 (Tex.App.-San Antonio 2000, orig. proceeding) (citing *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967)). The purpose of a habeas corpus proceeding is not to determine the guilt of the contemnor. *In re Levingston*, 996 S.W.2d 936, 937 (Tex. App.-Houston [14th Dist.] 1999, orig. proceeding). As this court has previously stated:

> The sole purpose of the proceeding is to determine whether the contemnor was afforded due process of law or if the order of contempt is void. A court will issue a writ of habeas corpus if the order underlying the contempt is void or if the contempt order itself is void. A contempt order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law.

*Casillas*, 25 S.W.3d at 298–99 (citations omitted).

"Due process requires a court, before imprisoning a person for violating an earlier order, to sign a written judgment or order of contempt and a written commitment order." *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex.1997). The contempt order must "clearly state in what respect the court's [earlier] order has been violated." *Id.* "It also follows that, to satisfy due process, the contempt order must clearly specify the punishment imposed by the court." *Id.*

## Analysis

Anascavage claims the enforcement order, which includes both the contempt and commitment orders, fails to comply with the due process safeguards found in section 157.166 of the Texas Family Code. That section provides:

(a) An enforcement order must include:

    (1) in ordinary and concise language the provisions of the order for which enforcement was requested;

    (2) the acts or omissions that are the subject of the order;

    (3) the manner of the respondent's noncompliance; and

    (4) the relief granted by the court.

(b) If the order imposes incarceration or a fine for criminal contempt,[2] an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the re-

---

**2.** There are of course two types of contempt, civil and criminal, for which commitment may be ordered. *See In re Scariati*, 988 S.W.2d 270, 272 n. 1 (Tex.App.-Amarillo 1998, orig. proceeding). The purpose of civil contempt is to coerce the party into complying with an order or decision of the trial court. *Id.* For example, in this case, Anascavage may avoid or reduce the period of civil commitment by complying with the court's prior order, that is, paying the child support arrearage. In contrast, criminal contempt is punishment for violating a prior order. *See id.* Criminal contempt is exemplified by a period of incarceration for a specific period unaffected by the party's performance of some future act. *See id.*

spondent's failure to comply with the order was found to constitute contempt. (c) If the enforcement order imposes incarceration for civil contempt, the order must state the specific conditions on which the respondent may be released from confinement.

TEX. FAM.CODE ANN. § 157.166 (Vernon 2002).

### A. The Criminal Contempt Order

■ We turn first to the criminal contempt provision of the enforcement order. Texas courts have held that section 157.166(b) is satisfied by: "(1) copying the provisions for which enforcement was sought into the order; (2) attaching a copy of the order for which enforcement was sought as an exhibit and incorporating it by reference; or (3) giving the volume and page numbers in the minutes of the court where one can find the order for which enforcement was sought." *Ex parte Tanner*, 904 S.W.2d 202, 205 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding) (interpreting similar requirements in former section 14.33(a) of the Family Code); *accord Levingston*, 996 S.W.2d at 938–39. However, these methods are not exclusive. *Levingston*, 996 S.W.2d at 939; *Tanner*, 904 S.W.2d at 205. In *Tanner*, the court held the enforcement order sufficient where it paraphrased the prior child support order by stating the date of the prior order, the amount of the child support, and the terms of payment, *i.e.*, weekly beginning on a specific date. *Tanner*, 904 S.W.2d at 205.

In this case, the enforcement order contains a section entitled "PRIOR ORDER,"

which reads: "The Court FINDS that on 3/5/02 the Court ordered *THOMAS ANASCAVAGE* to pay current child support of *$865.00 monthly*, beginning 2/1/02 and *monthly* thereafter." (emphasis in original). The prior order is clearly identified by date, and the obligation to pay child support in a specific amount monthly beginning on a date certain is clearly set forth. Therefore, we hold the enforcement order complies with section 157.166(b) by adequately setting forth the provision of the prior order sought to be enforced. Issues one and two are overruled.

### B. The Civil Contempt Commitment Order

In six issues, Anascavage challenges the validity of his incarceration for civil contempt. In issue three, Anascavage argues the civil contempt order does not meet the requirements of section 157.166(b) and section 157.166(c) is unconstitutional if it does not require the same findings setting forth the provisions of the order sought to be enforced as are required for criminal contempt. In issue four, he complains the enforcement order fails to set forth each act or omission for which he is subject to incarceration for civil contempt. In issues five and six, he complains that the civil contempt incarceration is based in part on his payment of $292.00 in court costs which are not due until June 30, 2004.[3] We do not reach the merits of these issues.

■ First, Anascavage provides absolutely no case law to support his argument regarding the constitutionality of section 157.166(c). Arguably, by failing to properly brief the issue, Anascavage has waived review. *See Couch v. Simmons*, 108

---

3. In issues five and six, Anascavage complains the civil contempt commitment is void because it is based in part on acts which are not due until a future date, the payment of $292.00 in court costs. Even if we agree that commitment cannot be based on an act for which the party is not yet in contempt, habeas corpus relief would not be warranted. We may modify the enforcement order to delete the reference to court costs from the commitment portion of the order. *See In re Watson*, 108 S.W.3d 531, 533 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

S.W.3d 338, 343 (Tex.App.-Amarillo 2003, no pet.); *Sellers v. San Antonio Steel Co., Inc.,* 04–00–00377–CV, 2001 WL 1160733, at *1 (Tex.App.-San Antonio Oct. 3, 2001, pet. denied) (not designated for publication).

◼ Second, because we hold the criminal contempt order to be valid and the term of that imprisonment has not expired, we may not review allegations relating to the civil contempt incarceration. *See In re Scariati,* 988 S.W.2d 270, 272 & n. 2 (Tex.App.-Amarillo 1998, orig. proceeding). Until the criminal imprisonment is terminated, there is always the possibility that Anascavage may complete the payments that will release him from jail on civil contempt prior to the expiration of his imprisonment for criminal contempt. *Id.* at 270 n. 2. (citing *Ex parte Hogan,* 916 S.W.2d 82, 87 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding)). Therefore, "the likelihood of continued restraint caused by the civil contempt remains hypothetical." *Id.* We cannot decide hypothetical issues or render advisory opinions. *Id.* Anascavage may re-urge the issues related to his civil contempt should he not perform the requirements of the enforcement order prior to the expiration of his imprisonment for criminal contempt. Issues three, four, five and six are overruled.

## C. Contempt Commitment for Failure to Perform Future Acts

◼ In the commitment portion of the enforcement order, the trial court ordered Anascavage to resume child support payments as previously ordered by the court. Anascavage argues the enforcement order is void because the trial court could not properly order him imprisoned for failing to perform a future duty. Although we agree Anascavage may not be subjected to imprisonment on the basis of future obligations, we hold this error does not render the enforcement order void.

◼ "If a portion of a contempt order is void while valid in all other respects, an appellate court may strike the offending portion and otherwise deny relief." *See In re Watson,* 108 S.W.3d 531, 533 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) (citing *Ex parte Roosth,* 881 S.W.2d 300, 301 (Tex.1994)). It appears the trial court's order for Anascavage to resume child support payments is merely misplaced in the enforcement order. There is nothing in the enforcement order to suggest that, although the order to resume payments appears just following the commitment orders, the trial court intended to incarcerate Anascavage to ensure he resumed such payments. Additionally, the language is superfluous. Anascavage is still bound to pay child support by the terms of the trial court's prior order. We will modify the enforcement order accordingly. Issues seven and eight are overruled.

### Conclusion

We hold the enforcement order is valid and enforceable with respect to the trial court's findings that Anascavage is subject to criminal contempt incarceration for failing to pay child support in the past. We decline to review the allegations regarding coercive civil contempt. We modify the trial court's enforcement order to strike the words "Obligor is ORDERED to resume regular child support payments as previously ordered by the Court" from page 5 of the enforcement order. The trial court's enforcement order of December 15, 2003 is affirmed as modified. The petition for writ of habeas corpus is denied. Relator shall pay all costs incurred in this proceeding.